FILED
2021 Dec-29  AM 11:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| TAMARA JEFFERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:19-cv-00858-NAD |
| | ) | |
| HIGH SEC LABS INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

For the reasons stated below, the court **GRANTS** Defendant High Sec Labs Inc.'s motion for summary judgment (Doc. 35).   The court will enter judgment for Defendant High Sec Labs.

## BACKGROUND

Plaintiff Tamara Jefferson's complaint alleges a claim for pregnancy discrimination in violation of Title VII and a related claim for retaliation.   Doc. 1.

**A.     Factual background**

**1.     Defendant High Sec Labs' attendance policy (point system)**

Defendant High Sec Labs manufactures cyber defense products at its facility in Huntsville, Alabama.   Doc. 39-1 at 2.

Beginning in August 2018 (until July 2020), Charles Phillips was the Production Manager at the facility.   Doc. 39-1 at 2.   Phillips supervised the

efficiency of the employees' work on the assembly production line.   Doc. 39-1 at 2. As part of that supervision, Phillips oversaw employee attendance as outlined in High Sec Labs' attendance policy—which involved a point system—because punctuality and consistency were critical to High Sec Labs' assembly production line work.   Doc. 39-1 at 2–3.

High Sec Labs had a written attendance policy that included an employee acknowledgment form, which Plaintiff Jefferson signed.   Doc. 39-2 at 11–12, 47–51.

As noted above, the High Sec Labs employee attendance policy was based on a point system for absences and tardiness.   Doc. 39-1 at 8–11.   Different types of employee attendance violations resulted in different amounts of points.   Doc. 39-1 at 8–11.   The policy clearly stated that "[a]ny employee who accumulates 6 or more points under this system will be discharged unless [a] supervisor intervenes."   Doc. 39-1 at 8.   Under the point system, when an employee accumulated 4 points, the employee would receive a final written warning.   Doc. 39-1 at 9.

Separately, if an employee knew in advance that she would be absent, the employee was required to complete a form to request approval from her supervisor. Doc. 39-2 at 14.

High Sec Labs had an electronic time clock for clocking-in and -out, which was used to determine attendance and tardiness.   Doc. 39-2 at 13–14.

2

> ### 2. Plaintiff Jefferson's employment at Defendant High Sec Labs and her relationship with Raymond Mason (another High Sec Labs employee)

Jefferson started working for High Sec Labs on February 14, 2017, as an assembly line worker; and she worked on the assembly line until her termination on August 31, 2018.   Doc. 39-1 at 3; 39-2 at 10–11, 20, 41, 45, 66.

During the relevant time period, Phillips was Jefferson's supervisor.   Doc. 39-1 at 2; Doc. 39-2 at 11.

Also, during her time working at High Sec Labs, Jefferson was in a romantic relationship with another High Sec Labs employee named Raymond Mason.[1]   Doc. 39-2 at 5.

> ### 3. Plaintiff Jefferson's attendance issues

In a sworn declaration in this case, Phillips stated that Jefferson had "a history of poor attendance and punctuality" at High Sec Labs.   Doc. 39-1 at 3.   Jefferson admitted in her deposition testimony that she "had some problems with attendance or late arrivals" during her employment.   Doc. 39-2 at 12–13.   On March 30, 2018, Jefferson received a performance improvement plan that stated that, if Jefferson had any attendance issues or late arrivals in the next 30 days, she would be terminated immediately.   Doc. 39-1 at 13; Doc. 39-2 at 52.

---

[1] Mason has filed a separate action against High Sec Labs in this court, *Mason v. High Sec Labs Inc.*, No. 19-cv-01193-NAD.

Later, Jefferson missed work on June 1, 7, 8, and 12, 2018—with no excuse—and consequently accumulated 4 points under High Sec Labs' attendance policy. Doc. 39-1 at 4.   On June 13, 2018, Jefferson received a written warning regarding her 4 attendance points.   Doc. 39-1 at 4, 15.   That written warning stated that, "at 6 points, employee will be terminated."   Doc. 39-1 at 15; Doc. 39-2 at 13, 53. Jefferson then arrived late to work on June 15, 2018, raising her total points to 4.5. Doc. 39-1 at 4.

On August 10, 2018, Jefferson left work early (without excuse), and she received a form stating that she had accumulated another point for that absence, which increased her total points under the attendance policy to 5.   Doc. 39-1 at 22; Doc. 39-2 at 16, 59.   But Phillips provided sworn testimony in this case that the form was incorrect, and that the attendance violation on August 10 actually brought Jefferson's total points to 5.5.   Doc. 39-1 at 4.

### 4.    Plaintiff Jefferson's pregnancy and miscarriage

While working at High Sec Labs, Jefferson became pregnant with Mason's child; in July 2018, she was about two-and-a-half months pregnant.   Doc. 39-2 at 14.   Jefferson requested time off on July 12, 2018, for her first doctor's appointment related to her pregnancy that required missing work.   Doc. 39-2 at 14.   She provided a medical excuse from the Best Start Program (a pregnancy program), and High Sec Labs approved her absence.   Doc. 39-2 at 14.

4

Jefferson again requested time off on July 19, 2018, for two medical appointments, and High Sec Labs again approved the absence.   Doc. 39-2 at 14–15. Around July 20, 2018, Jefferson suffered a miscarriage, and on July 21, 2018, Dr. Leon Lewis performed a dilation and suction curettage procedure ("D&C").   Doc. 39-2 at 15; Doc. 39-3 at 4.

### 5.     August 2018 events leading to Plaintiff Jefferson's termination, and her August 24, 2018 absence

Approximately one month later, on Friday August 24, 2018, Jefferson had a bad headache or migraine that she thought might have been related to her D&C procedure.   Doc. 39-2 at 16, 21.   Jefferson called High Sec Labs to say that she would be out of work due to illness; she was told that she would need to bring a valid medical excuse for the absence to be excused.   Doc. 39-2 at 16–17; Doc. 39-1 at 4. Jefferson did not tell anyone that the absence was because of her pregnancy or a pregnancy-related medical condition.   Doc. 39-1 at 5.

Jefferson provided deposition testimony that, after her headache did not improve, she drove herself to the emergency room on the night of Friday, August 24, 2018, but that she was not seen until after midnight (that is, early on Saturday, August 25).   Doc. 39-2 at 17.   Jefferson received pills for her headache, then she was discharged and went home.   Doc. 39-2 at 17.   Jefferson testified that the hospital gave her a return-to-work form dated August 24.   Doc. 39-2 at 17.

Medical records from Jefferson's hospital visit show an arrival date of August

25, 2018, with a complaint of "headache."    Doc. 39-2 at 60–62.    The records also show discharge instructions and a work release form that both were dated August 25, 2018.    Doc. 39-2 at 64–65.

Jefferson then arrived late to work on Monday, August 27, 2018, increasing her attendance points total to 6, and making her subject to termination under the attendance policy.    Doc. 39-1 at 5.    On August 27, Jefferson brought with her the form purportedly from the hospital, which she gave to Phillips, and which said that she had been seen in the hospital on Friday, August 24, 2018.    Doc. 39-1 at 5, 24; Doc. 39-2 at 17.    That form said nothing about Jefferson's pregnancy.    Doc. 39-2 at 21.

Phillips stated in his sworn declaration that he "had reason to believe that the Work Release Form [dated August 24, 2018] was not valid and that Jefferson had not actually visited the emergency room the 24th."    Doc. 39-1 at 5.    Phillips asked Jefferson if she had falsified the form, and she said that she had not.    Doc. 39-2 at 17.    Jefferson testified in her deposition that she called the hospital on speakerphone with Phillips present in order to confirm that she had visited the hospital, but that Phillips still told her that she needed another doctor's excuse, and that Phillips sent Jefferson home from work.    Doc. 39-2 at 19.

Jefferson admitted in her deposition that the form she gave Phillips said that she had visited the hospital on August 24, 2018, but that she "really hadn't gone into

the hospital until the 25th"—which is consistent with the work release form, dated August 25, 2018, in the medical records from Jefferson's hospital visit.   Doc. 39-2 at 17.

After sending Jefferson home from work on August 27, 2018, Phillips had conversations over the next few days with Roni Soffer—an owner of High Sec Labs—about continuing Jefferson's employment.   Doc. 39-1 at 5.   Phillips understood that Soffer also had doubts about Jefferson's medical excuse for August 24, 2018.   Doc. 39-1 at 5.   However, Jefferson emailed Soffer after Phillips had sent her home, and Soffer told Jefferson that she could return to work.   Doc. 39-2 at 19–20.

When Jefferson returned to work on August 31, 2018, she was moved from the assembly line to the warehouse, where she never had worked before.   Doc. 39-2 at 20.   Jefferson testified that she worked in the warehouse only for a few hours, and that Phillips and another woman then told Jefferson that she was terminated. Doc. 39-2 at 20; Doc. 39-2 at 66.

### 6.   Defendant High Sec Labs' reasons for Plaintiff Jefferson's termination

Jefferson testified that Phillips told her that she was terminated because her "note was fake."   Doc. 39-2 at 20.   Phillips, on the other hand, stated in his sworn declaration that High Sec Labs had terminated Jefferson for her failure to adhere to the requirements of the attendance policy, and that he told Jefferson that her

7

attendance violations were the reason for her termination.   Doc. 39-1 at 6. Jefferson received a termination letter dated August 31, 2018, which gave no specific reason for her termination.   Doc. 39-2 at 66.

When asked in her deposition why she had been terminated, Jefferson answered, "I honestly don't know."   Doc. 39-2 at 21.   She admitted that no one at High Sec Labs had told her that she was terminated because of her pregnancy.   Doc. 39-2 at 21.   Jefferson also conceded that she did not have "any facts or evidence that [she] could tell [counsel] that would support the position that [she was] terminated because [she] was pregnant." Doc. 39-2 at 21.

Jefferson also admitted that, prior to her termination, she had not filed "any sort of complaint of discrimination or harassment against High Sec [Labs]."   Doc. 39-2 at 21.   When asked why she was suing High Sec Labs, Jefferson testified that she had been "wrongfully fired," and that her pregnancy had "a lot to do with it"— because her pregnancy had caused her to miss work, and because she had gone to the hospital on August 24/25, 2018, for a reason related to her D&C procedure. Doc. 39-2 at 21.

Jefferson conceded that, if her absence on August 24, 2018, was unexcused, then she had accumulated 6 attendance points.   Doc. 39-2 at 21.   According to Phillips, Jefferson's tardiness on August 27 meant that she had accumulated 6 attendance points, regardless whether that August 24 absence was excused.   Doc.

39-1 at 5.

According to Phillips' sworn declaration, Jefferson's termination was not related to pregnancy or any pregnancy-related medical condition; Phillips stated that he "did not know or believe Jefferson to be pregnant at the time of her termination," and "did not know or believe that Jefferson's tardiness on August 27, 2018 or absence on August 24, 2018 were related to pregnancy or any pregnancy-related medical condition."   Doc. 39-1 at 6.   Phillips stated that "[n]one of the absences or tardies for which Jefferson was assessed points were related to pregnancy or any pregnancy-related condition."   Doc. 39-1 at 6.   Phillips also stated that, during his tenure at High Sec Labs, he "applied the attendance policy consistently and did not knowingly allow any employees to exceed applicable point totals without discipline or termination."   Doc. 39-1 at 6.

### B.   Procedural background

Plaintiff Jefferson timely filed an EEOC charge and received a right to sue letter.   Doc. 1-1.   On June 4, 2019, Jefferson filed her complaint, alleging one claim for discrimination and another for retaliation, both in violation of Title VII. Doc. 1.   Defendant High Sec Labs then filed a motion to dismiss (Doc. 7), arguing that Jefferson's complaint was untimely (Doc. 8). The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).   Doc. 13.

The court (Magistrate Judge Johnson) converted High Sec Labs' motion to

dismiss into a motion for summary judgment, and denied the motion because High Sec Labs failed to show that Jefferson's complaint was untimely filed.   Doc. 16.

On March 1, 2021 (after the close of discovery), High Sec Labs filed its summary judgment motion (Doc. 35), along with a brief in support (Doc. 36), and evidentiary material (Doc. 39).

This case was reassigned to the undersigned on August 31, 2021—almost six months later.   Doc. 41.   At that time, Jefferson had not filed any response to High Sec Labs' summary judgment motion.

On September 10, 2021, the court held a status conference, and then ordered Jefferson to file a response to High Sec Labs' summary judgment motion on or before September 17, 2021.   Doc. 43.   Jefferson did not file a response.

So, on September 24, 2021, the court ordered Jefferson to show cause in writing—on or before October 1, 2021—why the court should not grant High Sec Labs' summary judgment motion.   Doc. 44.   Jefferson did not respond by October 1.

Instead, on October 4, 2021, Jefferson responded by filing a one-page response that consisted only of a cover page.   Doc. 45.

On October 5, 2021, the court contacted Jefferson's counsel by email (cc'ing High Sec Labs' counsel) to inquire whether there had been some error in the filing. But Jefferson still has not filed a substantive response.

### C.     Legal background

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e–2(a)(1).   The prohibition on discrimination because of an individual's sex includes discrimination based on "pregnancy, childbirth, or related medical conditions."   42 U.S.C. § 2000e(k).

Title VII's anti-retaliation provision makes it unlawful for an employer "to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by Title VII, or because of the employee's participation in a Title VII investigation or hearing.   42 U.S.C. § 2000e–3(a).   The first clause is known as the "opposition" clause, and the second is known as the "participation" clause.   *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020).   In this regard, the term "oppose" carries its ordinary meaning.   *Crawford v. Metropolitan Gov. of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009).

### LEGAL STANDARD

Summary judgment is appropriate when the movant establishes that "there is no genuine dispute as to any material fact," and that the movant "is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).   A material fact is one that might affect the outcome of the case.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   And a dispute about a material fact is "genuine," if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id.*

To avoid summary judgment, the nonmovant must go beyond mere allegations to offer specific facts creating a genuine dispute for trial.   *Celotex*, 477 U.S. at 324–25.   The court's responsibility is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   *Anderson*, 477 U.S. at 249.   The court must construe all evidence and draw all reasonable inferences in the light most favorable to the nonmovant. *Centurion Air Cargo, Inc. v. UPS Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005).

Where there is no genuine dispute of material fact for trial, the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a), (c).

## DISCUSSION

While Plaintiff Jefferson has not filed a response to Defendant High Sec Labs' summary judgment motion, the court cannot grant a summary judgment motion because of "the mere fact that the motion was unopposed."   *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).   Accordingly, the court carefully has reviewed the record evidence, construing all facts and reasonable inferences in favor of Jefferson (the

nonmovant), and has determined that the motion is appropriate for decision without oral argument.

I.    **On her discrimination claim, there is no direct record evidence of discrimination, and—based on the record circumstantial evidence— Plaintiff Jefferson cannot make the necessary showing of pretext.**

On her pregnancy discrimination claim, there is no direct evidence of discrimination, and—based on the record circumstantial evidence—Plaintiff Jefferson cannot make the necessary showing of pretext.  To survive a summary judgment motion, a plaintiff asserting unlawful discrimination in violation of Title VII "must present sufficient facts to permit a jury to rule in her favor."  *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc) ("*Lewis I*").  A plaintiff can satisfy her burden in any one of three ways:  (1) by presenting direct evidence of discriminatory intent; (2) by creating a triable issue of fact under the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) by presenting "a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination."  *Id.* at 1220 & n.6.

A.    **There is no direct evidence of discrimination.**

In this case, there is no direct record evidence of discrimination.  Direct evidence proves a fact without "inference or presumption"; therefore, direct evidence of discrimination is evidence that "reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the

employee." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (abrogated on other grounds)).  Direct evidence of discrimination encompasses "[o]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." *Id.*  A statement that suggests, but does not prove, a discriminatory motive is not direct evidence. *Id.*

Plaintiff Jefferson has not alleged, and the record does not contain, any blatant remarks relating to her pregnancy that could constitute direct evidence of discrimination.  *See* Doc. 1; *Fernandez*, 961 F.3d at 1156.  In fact, the record does not appear to include any remarks from anyone at Defendant High Sec Labs about Jefferson's pregnancy, much less any remarks about her pregnancy that clearly show a discriminatory attitude.  *See generally* Doc. 39-2; *Fernandez*, 961 F.3d at 1156.  Indeed, Jefferson admitted in her deposition testimony that no one at High Sec Labs had told her that she was terminated for any reason related to her pregnancy.  Doc. 39-2 at 21.  Thus, the record does not contain any direct evidence of pregnancy discrimination.

## B. On the *McDonnell Douglas* framework and the convincing mosaic test, there is no evidentiary basis to establish pretext.

Likewise, the record circumstantial evidence is insufficient to create a triable issue on Plaintiff Jefferson's discrimination claim.  On the *McDonnell Douglas* framework and the convincing mosaic test, the record evidence cannot support a

finding of pretext.   To prevail on a claim for discrimination in violation of Title VII under the *McDonnell Douglas* burden-shifting framework, a plaintiff must show that an employer's proffered legitimate reason for an adverse employment action was "merely a pretext for unlawful discrimination."   *Lewis I*, 918 F.3d at 1221.[2]

The convincing mosaic test also requires that a plaintiff must show that an employer's justification for an adverse employment action was pretextual.   *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) ("*Lewis II*").   So, on either standard, a plaintiff must show that her employer's proffered, legitimate nondiscriminatory reason for the alleged unlawful action was a pretext for discrimination.   *See Lewis I*, 918 F.3d at 1221; *Lewis II*, 934 F.3d 1185.

Furthermore, to establish pretext, a plaintiff must show both that the employer's proffered reason for an employment action was false *and* that the real reason for the action was discrimination.   *Saint Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).   To make that showing, the plaintiff must meet the employer's proffered reason "head on and rebut it."   *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).   A plaintiff can rebut an employer's

---

[2] Under the *McDonnell Douglas* burden-shifting framework, the plaintiff "bears the initial burden of establishing a *prima facie* case of discrimination"; then "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions."   *Lewis I*, 918 at 1220.   "Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination."   *Id.* at 1221.

proffered reason and avoid summary judgment by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Ala. St. Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Here, Jefferson cannot meet Defendant High Sec Labs' proffered reason for terminating her "head on and rebut it." *See Chapman*, 229 F.3d at 1030. High Sec Labs asserts that it terminated Jefferson because she violated its attendance policy by accumulating 6 attendance points. Doc. 36 at 14. In this regard, the record supports High Sec Labs' proffered reason for termination—that is, Jefferson's attendance violations. Phillips provided a sworn statement that High Sec Labs decided to terminate Jefferson based on her failure to adhere to the requirements of the High Sec Labs attendance policy; and Phillips stated that, when he terminated her, he told Jefferson that her attendance violations were the reason for her termination. Doc. 39-1 at 6.

In addition, Phillips stated in his sworn declaration that Jefferson's termination was not related to her pregnancy or any pregnancy-related medical condition; indeed, Phillips stated that he "did not know or believe Jefferson to be pregnant at the time of her termination," and that he "did not know or believe that

Jefferson's tardiness on August 27, 2018 or absence on August 24, 2018 were related to pregnancy or any pregnancy-related medical condition."   Doc. 39-1 at 6.

Consistent with those statements from Phillips' sworn declaration, the record confirms that High Sec Labs terminated Jefferson based on her attendance violations.   Record evidence shows that High Sec Labs previously had placed Jefferson on a performance improvement plan related to attendance.   Doc. 39-1 at 13; Doc. 39-2 at 52.   Jefferson also had received a written warning after she had accumulated 4 attendance points, and that warning stated that she would be terminated if she were to accumulate 6 attendance points.   Doc. 39-1 at 4–5, 15; Doc. 39-2 at 13, 53.

Jefferson then had multiple, additional unexcused absences.   Doc. 39-1 at 4, 17–20, 22; Doc. 39-2 at 16, 59.   According to Phillips, Jefferson accumulated 6 attendance points when she arrived late to work on August 27, 2018 (Doc. 39-1 at 5)—even without the (disputed) unexcused absence on August 24, 2018.[3]   High Sec Labs' attendance policy clearly stated that an employee who accumulates 6 attendance points faces termination.   Doc. 39-1 at 8.   Thus, the record clearly supports High Sec Labs' proffered legitimate reason for terminating Jefferson.

---

[3] For that reason, the apparent factual dispute between the parties regarding whether Jefferson's absence on August 24, 2018, was excused (or not) is immaterial, and cannot create a triable issue of fact.   There is no evidence to rebut the fact that Jefferson was subject to termination based on the 6 attendance points that she had accumulated, even without that disputed August 24 attendance violation.

Moreover, Jefferson has not adduced any evidence to rebut High Sec Labs' proffered reason for her termination.   There is no evidence suggesting that Jefferson did not violate the attendance policy, and Jefferson actually admitted in her deposition testimony that she had accumulated 6 attendance points—if her absence on August 24, 2018, was unexcused.   Doc. 39-2 at 21.

Regardless, Jefferson explicitly stated in her deposition testimony that she did not know why she had been terminated.   Doc. 39-2 at 21.   She admitted that she did not know of any facts or evidence that would support the allegation that she had been terminated because of her pregnancy.   Doc. 39-2 at 21.   Rather, Jefferson simply stated that she felt that she was "wrongfully fired."   Doc. 39-2 at 21.   She stated that she thought that her pregnancy was related to her termination because it caused her to miss work and because she believed that her absence on August 24, 2018, was related to her miscarriage.[4]   Doc. 39-2 at 21.

But Jefferson's subjective belief that she was "wrongfully fired" (*id.*) cannot create a triable issue because there is no supporting evidence to show any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in High Sec Labs' proffered reason for termination—that is, Jefferson's attendance

---

[4] The court assumes but does not decide that Jefferson can establish a prima facie case of discrimination based on those apparently unsupported assertions.   Even so, there still is no triable issue of fact because the record evidence cannot support a finding of pretext.

violations.  *See Jackson*, 405 F.3d at 1289.  The record cannot support a finding that High Sec Labs' proffered reason for Jefferson's termination was false.  *See Saint Mary's Honor Ctr.*, 509 U.S. at 515.

Even if High Sec Labs' reason for her termination were false, there still is no record evidence to support a finding that the real reason was discrimination.  *See id.* According to Phillips' unrebutted testimony, he did not even know that Jefferson's absences and tardiness—which led to her termination—might have been related to pregnancy.  Doc. 39-1 at 6.  Jefferson has adduced no contrary evidence that could call into doubt Phillips' lack of knowledge.  For example, the record shows that the medical excuse that Jefferson submitted (dated August 24, 2018) stated only that she had been to the hospital emergency room; and Jefferson's medical records (dated August 25, 2018) showed only that she had been treated for a headache, not for anything related to pregnancy.  Doc. 39-2 at 60–62.

Tellingly, Jefferson's own deposition testimony focused on her belief that her termination had been "wrongful" and unfair, based in part on her contention that she had not falsified her medical excuse for August 24, 2018.  Doc. 39-2 at 20–21.  But "[u]nfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII."  *Boyland v. Corrections Corp. of Am.*, 390 F. App'x 973, 975 (11th Cir. 2010) (quoting *Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995)).

Construing all facts and reasonable inferences in Jefferson's favor (*see Centurion Air Cargo, Inc.*, 420 F.3d at 1149), the record circumstantial evidence cannot support a jury finding that High Sec Labs' proffered reason for terminating Jefferson was pretext for pregnancy discrimination.

*     *     *

Accordingly, there is no triable issue of fact on Jefferson's discrimination claim.

## II.    On her retaliation claim, there is no direct record evidence of retaliation, and—based on the record circumstantial evidence—Plaintiff Jefferson cannot make the necessary showing of protected activity.

On her retaliation claim, there is no direct record evidence of retaliation, and—based on the record circumstantial evidence—Plaintiff Jefferson cannot make the necessary showing of statutorily protected activity.   Under Title VII, an employer cannot retaliate against an employee for engaging in statutorily protected conduct.   42 U.S.C. § 2000e–3(a).[5]   A plaintiff can establish a violation of the anti-retaliation provision of Title VII by direct or circumstantial evidence.   *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016).   Where a plaintiff only presents circumstantial evidence of retaliation, "the burden of proof shifts between

---

[5] Jefferson appears to allege a retaliation claim grounded in the opposition clause, and a review of the record demonstrates that there is no evidence supporting a claim under the participation clause anyway.   *See supra* Background Part C (Legal background).

the parties in accordance with the framework established in *McDonnell Douglas Corp. v. Green*." *Id.*

As with Jefferson's discrimination claim, the record contains no evidence of any comments about retaliation or protected activity that could qualify as direct evidence of retaliation. *See Fernandez*, 961 F.3d at 1156. As a result, the *McDonnell Douglas* framework applies. *See Furcron*, 843 F.3d at 1310.

To establish retaliation under the *McDonnell Douglas* framework, a plaintiff first must make a prima facie showing, which requires the plaintiff to establish three elements: "(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997) (abrogated on other grounds by *Lewis I*, 918 F.3d at 1213)).

Jefferson's retaliation claim fails at the first step. Jefferson cannot show that she engaged in any statutorily protected expression or activity. *See id.* Title VII's anti-retaliation provision does extend to informal complaints, but the necessary showing of protected activity still requires that the plaintiff have "explicitly or implicitly" communicated her belief that an employment practice "constitutes unlawful employment discrimination." *Furcron*, 843 F.3d at 1311.

Here, there is no record evidence that Jefferson ever did anything to

communicate any alleged belief that Defendant High Sec Labs was engaging in any unlawful activity under Title VII.   In fact, Jefferson conceded in her deposition testimony that, prior to her termination, she did not file "any sort of complaint of discrimination or harassment against High Sec [Labs]."   Doc. 39-2 at 21.   Nor is there any other evidentiary basis from which a jury reasonably could infer any protected expression or activity.

Thus, because Jefferson cannot show that she engaged in any statutorily protected conduct (*see Furcron*, 843 F.3d at 1311), she cannot make a prima facie showing of retaliation as required under the *McDonnell Douglas* framework.   *See Johnson*, 948 F.3d at 1325.   As such, there is no triable issue of fact on Jefferson's retaliation claim.

## CONCLUSION

For the reasons stated above, the court **GRANTS** Defendant High Sec Labs' summary judgment motion (Doc. 35).   The court separately will enter final judgment for High Sec Labs.

**DONE** and **ORDERED** this December 29, 2021.

_____

**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE